STATE OF CONNECTICUT *v.* JOHN LONERGAN
(13640)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

---

Argued October 5—decision released November 28, 1989

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Alan Reisner,* assistant state's attorney, and *Maria Kahn,* former legal intern, for the appellant (state).

*Raymond T. DeMeo,* with whom were *James A. Wade* and, on the brief, *Sally S. King,* for the appellee (defendant).

GLASS, J. This appeal involves the issue of whether a charge brought against a defendant in a second prosecution constitutes, for double jeopardy purposes, the

"same offense" for which the defendant has already been tried. In particular, the question presented is whether this court should make this determinaton simply by examining the statutory elements of the crimes, as set forth in *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), or in addition, as suggested by *In re Nielsen,* 131 U.S. 176, 9 S. Ct. 672, 33 L. Ed. 118 (1889), and its progeny, by examining the record to determine if the state will rely on the same evidence in the latter prosecution as it used in the former.

The Appellate Court's opinion revealed the following undisputed facts and procedural history of the case. See *State* v. *Lonergan,* 16 Conn. App. 358, 548 A.2d 718 (1988). On May 22, 1985, the defendant, John Lonergan, was driving a car on Airport Road in Hartford. At approximately 9 p.m., the defendant's vehicle collided with a motorcycle operated by Scott Sementilli. The defendant was arrested and charged with operating a motor vehicle while under the influence of liquor or drugs in violation of General Statutes § 14-227a.[1] On the following day, Sementilli died as a result of the injuries he sustained during the collision. The defendant was subsequently arrested, and charged with manslaughter in the second degree with a motor vehicle while intoxicated in violation of General Statutes § 53a-56b.[2] The defendant pleaded not guilty to both charges.

[1] At the time of the incident, General Statutes (Rev. to 1985) § 14-227a provided in pertinent part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (A) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking areas for ten or more cars or on any school property while under the influence of intoxicating liquor or any drug or both."

[2] At the time of the incident, General Statutes (Rev. to 1985) § 53a-56b provided: "MANSLAUGHTER IN THE SECOND DEGREE WITH A MOTOR VEHICLE WHILE INTOXICATED: CLASS C FELONY. (a) a person is guilty of man-

The state elected to sever the two counts and proceeded to trial on the manslaughter count only. The manslaughter count was tried to the court and, at the close of the state's case-in-chief, the defendant moved for a judgment of acquittal. The trial court ruled that the state had failed to prove beyond a reasonable doubt that the defendant's alleged intoxication had caused the death of Sementilli and, therefore, granted the defendant's motion for judgment of acquittal. The state then sought to prosecute the defendant for operating a motor vehicle while under the influence of liquor. The defendant moved for a dismissal of the information on the ground that such a second prosecution was barred by the double jeopardy clause of the fifth amendment to the United States constitution and article first, § 9 of the Connecticut constitution. The trial court ruled that the defendant's constitutional right against double jeopardy prevented the state from prosecuting him for operating a motor vehicle while under the influence. The state then appealed the trial court's ruling to the Appellate Court.

The Appellate Court affirmed the trial court's dismissal of the information charging the defendant with operating under the influence, and on February 22, 1989, this court granted the state's petition for certification, limited to this issue: "Did the Appellate Court err in holding that the double jeopardy clause bars a prosecution on a charge of operating a motor vehicle while under the influence of intoxicating liquor after acquittal of a charge of manslaughter in the second

---

slaughter in the second degree with a motor vehicle while intoxicated when, in consequence of his intoxication while operating a motor vehicle, he causes the death of another person. For the purposes of this section, 'intoxication' shall include intoxication by alcohol or by drug or both.

"(b) Manslaughter in the second degree with a motor vehicle while intoxicated is a class C felony and the court shall suspend the motor vehicle operator's license or nonresident operating privilege of any person found guilty under this section for one year."

degree with a motor vehicle while intoxicated arising out of the same incident?" The state argues that the Appellate Court erred in holding that the prosecution of the defendant on the charge of operating a motor vehicle while under the influence of liquor was barred by the double jeopardy clause. Specifically, the state contends that the Appellate Court misconstrued both federal and state law pertaining to what constitutes double jeopardy in successive prosecution cases. In addition, the state maintains that the precedent set by the Appellate Court's decision is contrary to the purposes of the double jeopardy clause. We do not agree and, therefore, affirm the judgment of the Appellate Court.

I

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. This constitutional guarantee is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). In addition, although the Connecticut constitution does not include a specific double jeopardy provision, this court "has long recognized as a fundamental principle of common law that no one shall be put in jeopardy more than once for the same offense." *State* v. *Langley,* 156 Conn. 598, 600-601, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969). Therefore, the due process guarantees provided by article first, § 9 of the Connecticut constitution have been held to encompass the protection against double jeopardy. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). The constitutional prohibition of double jeopardy has been held to consist of three separate

guarantees: (1) "It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense." *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).

The state argues that the Appellate Court erred in holding that manslaughter in the second degree with a motor vehicle while intoxicated was the "same offense" as operating a motor vehicle under the influence of liquor, and thus the defendant's acquittal on the manslaughter count barred the state from prosecuting him on the count of operating while under the influence. The state asserts that the determination of whether the two crimes constituted the "same offense" should have been made *solely* by applying the test set forth in *Blockburger* v. *United States,* supra. In *Blockburger,* the United States Supreme Court considered whether several offenses charged in a single prosecution were sufficiently different to permit the imposition of multiple sentences without violating the double jeopardy clause. Id., 304. In so doing, the United States Supreme Court, emphasizing a comparison of the elements of the offenses, fashioned the following test: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial. *Iannelli* v. *United States,* 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975); see *State* v. *McCall,* 187 Conn. 73, 90, 444 A.2d 896 (1982).

The United States Supreme Court, in *Brown* v. *Ohio,* 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), extended the *Blockburger* test to apply to successive prosecution cases. In *Brown,* the state of Ohio had attempted to prosecute the defendant for the crime of auto theft after he had already been convicted of joyriding (taking or operating a motor vehicle without the owner's consent). Id., 162–64. Applying the *Blockburger* test, the court concluded that since joyriding did not require proof of an element distinct from auto theft, it was a lesser included offense of auto theft, and therefore the two crimes constituted the "same offense." Id., 168–69.

In applying the *Blockburger* test to the present case, the Appellate Court correctly concluded that under this test manslaughter with a motor vehicle while intoxicated was not the same offense as operating under the influence, as each offense required proof of a fact that the other did not. See *State* v. *Lonergan,* supra, 366. A conviction of manslaughter in the second degree with a motor vehicle while intoxicated requires proof of (1) operation of a motor vehicle (2) while intoxicated (3) which causes the death of another person. General Statutes § 53a-56b; see footnote 2, supra. A conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs, requires proof of (1) operation of a motor vehicle (2) on a public highway or on one of the other designated areas (3) while under the influence of intoxicating liquor or drugs. General Statutes § 14-227a; see footnote 1, supra. As the Appellate Court accurately noted, "[w]hile these two offenses share certain elements, each contains an element that the other does not. A conviction for operating a motor vehicle while under the influence of alcohol must be supported by proof that the defendant operated a motor vehicle on one of the locations specified in the statute; such a geographical element is not pertinent to a con-

viction for manslaughter with a motor vehicle while intoxicated. A conviction for manslaughter with a motor vehicle while intoxicated must be supported by proof that another person died as a result of the defendant's intoxication; such a death element is not pertinent to a conviction for operating a motor vehicle while under the influence of alcohol. For these reasons, the two offenses are not the same under the *Blockburger* test." *State* v. *Lonergan,* supra, 367.

The Appellate Court, however, did not end its double jeopardy analysis at this point. Rather, the Appellate Court concluded that the *Blockburger* test was not the only applicable test for determining whether successive prosecutions impermissibly involve the "same offense." Invoking the United States Supreme Court decision of *Illinois* v. *Vitale,* 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980), the Appellate Court held: "[I]f the same evidence offered to prove a violation of the offense charged in the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution, then prosecution of the second offense is barred on double jeopardy grounds, regardless of whether either offense requires proof of a fact that the other does not." *State* v. *Lonergan,* supra, 368. The Appellate Court then concluded that, since the state was going to use the same evidence in its prosecution of the defendant for operating under the influence as it had used in its previous prosecution of the defendant for manslaughter, the second prosecution was barred as violative of the double jeopardy clause. Id., 378.

The state argues that the Appellate Court's departure from a strict *Blockburger* analysis was contrary to United States Supreme Court precedent and, accordingly, reversible error. We do not agree. Although the United States Supreme Court in *Brown* v. *Ohio,* supra, extended the *Blockburger* test to apply to successive

prosecution cases, the court did not state that the *Block-burger* test was the exclusive method for determining whether successive prosecutions involved the "same offense" in violation of the double jeopardy clause. In *Brown,* the court concluded that the two crimes of auto theft and joyriding failed to satisfy the *Blockburger* test and, therefore, were the same offense for double jeopardy purposes. Significantly, however, the *Brown* court did not end its inquiry at this point. Rather, the court proceeded to declare: "The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *Brown* v. *Ohio,* supra, 166 n.6.

To support this assertion, the *Brown* court relied on *Ashe* v. *Swenson,* 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), and *In re Nielsen,* supra, positing that these cases offer double jeopardy protection in successive prosecution cases beyond that of *Blockburger.* The court stated: "[I]n *Ashe* . . . where an acquittal on a charge of robbing one of several participants in a poker game established that the accused was not present at the robbery, the Court held that principles of collateral estoppel embodied in the Double Jeopardy Clause barred prosecutions of the accused for robbing the other victims. And in *In re Nielsen* . . . the Court held that a conviction of a Mormon on a charge of cohabiting with his two wives over a 2 1/2-year period barred a subsequent prosecution for adultery with one of them on the day following the end of that period.

"In both cases, strict application of the *Blockburger* test would have permitted imposition of consecutive sentences had the charges been consolidated in a sin-

gle proceeding. In *Ashe,* separate convictions of the robbery of each victim would have required proof in each case that a different individual had been robbed. . . . In *Nielsen,* conviction for adultery required proof that the defendant had sexual intercourse with one woman while married to another; conviction for cohabitation required proof that the defendant lived with more than one woman at the same time. Nonetheless, the Court in both cases held the separate offenses to be the 'same' for [double jeopardy purposes]." *Brown* v. *Ohio,* supra, 166 n.6. In particular, the *Nielsen* court held: "[W]here . . . a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." *In re Nielsen,* supra, 188.

Additionally, in 1977, the United States Supreme Court in *Harris* v. *Oklahoma,* 433 U.S. 682, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977), relied on *Nielsen* to bar a second prosecution when the *Blockburger* test would have permitted it.[3] *Harris* involved a prosecution for robbery after a conviction for felony murder in which the robbery was the underlying felony. Citing the *Nielsen* "incidents" language, and failing to cite *Blockburger* at all, the court, in a per curiam decision, held: "When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one." *Harris* v. *Oklahoma,* supra, 682.

---

[3] "The felony murder statute at issue in *Harris* [v. *Oklahoma,* 433 U.S. 682, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977),] did not on its face require proof of a robbery to establish a conviction, and the robbery statute likewise did not require proof of a murder, thus under a strict application of the *Blockburger* test the two statutes would not be held to proscribe the same offense." Note, "Multiple Prosecutions and Punishments Under RICO: A Chip Off the Old '*Blockburger,*'" 52 Cinn. L. Rev. 467, 482 (1983).

Three years later, *Harris* was followed by a similar analysis and decision in *Illinois* v. *Vitale,* supra. In *Vitale,* the defendant was involved in an automobile accident that resulted in two deaths. He was convicted for the traffic offense of failing to reduce speed to avoid an accident. The state subsequently attempted to prosecute him for involuntary manslaughter, but the Illinois Supreme Court held that the two offenses were the same for double jeopardy purposes. Id., 412–15. The United States Supreme Court then granted certiorari, and vacated the judgment of the Illinois Supreme Court and remanded, employing what was, in effect, a two-tiered analytical framework for determining whether the two offenses were the same. The court stated: "If, as a matter of Illinois law, a careless failure to slow is always a necessary element of manslaughter by automobile, then the two offenses are the 'same' under *Blockburger* and Vitale's trial on the latter charge would constitute double jeopardy under *Brown* v. *Ohio.* In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* and our later decision in *Harris* v. *Oklahoma.* " Id., 419–20.

In short, the court in *Vitale* indicated that there are two ways of detecting double jeopardy violations in successive prosecution cases. First, the *Blockburger* test may categorize the two offenses as being the same. Second, an examination of the evidence may be undertaken to determine if the second offense requires proof that was already offered to prove the first offense. See G. Thomas, "The Prohibition of Successive Prosecutions for the Same Offense: In Search of a Definition," 71

Iowa L. Rev. 323, 350–52 (1986). The court made it clear, however, that this additional protection is not implicated by the "mere possibility" that the second prosecution will require proof of the same conduct as the first. Rather, the state must actually rely on the same conduct or concede that it will do so. Therefore, because of the *Vitale* court's "doubts about the relationship under Illinois law between the crimes of manslaughter and a careless failure to reduce speed to avoid an accident, and because the reckless act or acts the State [would] rely on to prove manslaughter [were] still unknown," the court vacated the judgment of the Illinois Supreme Court and remanded the case to that court. *Illinois* v. *Vitale,* supra, 421.

Thus, we are not persuaded that the Appellate Court contravened United States Supreme Court precedent in *State* v. *Lonergan,* supra. In fact, many other courts have interpreted United States Supreme Court precedent as granting such additional double jeopardy protection in successive prosecution cases. See, e.g., *Rubino* v. *Lynaugh,* 845 F.2d 1266 (5th Cir. 1988); *United States* v. *Ragins,* 840 F.2d 1184 (4th Cir. 1988); *Flittie* v. *Solem,* 775 F.2d 933 (8th Cir. 1985), cert. denied, 475 U.S. 1025, 106 S. Ct. 1223, 89 L. Ed. 2d 333 (1986); *Jordan* v. *Virginia,* 653 F.2d 870 (4th Cir. 1980); *United States* v. *Black,* 605 F. Sup. 1027 (D.C. 1985); *United States* v. *Haggerty,* 528 F. Sup. 1286 (D. Colo. 1981); *State* v. *McGaughy,* 505 So. 2d 399 (Ala. Crim. App. 1987); *State* v. *Burroughs,* 246 Ga. 393, 271 S.E.2d 629 (1980); *State* v. *DeLuca,* 108 N.J. 98, 527 A.2d 1355, cert. denied, 484 U.S. 944, 108 S. Ct. 331, 98 L. Ed. 2d 358 (1987); *State* v. *Carter,* 291 S.C. 385, 353 S.E.2d 875 (1987); *State* v. *Grampus,* 288 S.C. 395, 343 S.E.2d 26 (1986); *May* v. *State,* 726 S.W.2d 573 (Tex. Crim. App. 1987).

The state appropriately indicates, however, that a number of courts have construed United States Supreme Court precedent as suggesting a strict *Blockburger* analysis. See, e.g., *United States* v. *Benton,* 852 F.2d 1456 (6th Cir.), cert. denied sub nom. *Campbell* v. *United States,* 488 U.S. 993, 109 S. Ct. 555, 102 L. Ed. 2d 582 (1988); *United States* v. *Genser,* 710 F.2d 1426 (10th Cir. 1983); *United States* v. *Brooklier,* 637 F.2d 620 (9th Cir. 1980), cert. denied, 450 U.S. 980, 101 S. Ct. 1514, 67 L. Ed. 2d 815 (1981); *State* v. *Seats,* 131 Ariz. 89, 638 P.2d 1335 (1981) (en banc); *Carlson* v. *State,* 405 So. 2d 173 (Fla. 1981); *People* v. *Jackson,* 118 Ill. 2d 179, 514 N.E.2d 983 (1987), overruling *People* v. *Zegart,* 83 Ill. 2d 440, 415 N.E.2d 341 (1980), cert. denied, 452 U.S. 948, 101 S. Ct. 3094, 69 L. Ed. 2d 961 (1981). As the Appellate Court noted: "These courts appear to apply an unmodified *Blockburger* analysis to successive prosecution cases for basically three reasons. The first reason is the statement in *Vitale* that *Blockburger* is 'the principal test for determining whether two offenses are the same for the purposes of barring successive prosecutions.' *Illinois* v. *Vitale,* supra, 416; see, e.g., *United States* v. *Brooklier,* supra, 624." *State* v. *Lonergan,* supra, 373. The second reason is a statement made by Justice Rehnquist in his dissenting opinion in *Thigpen* v. *Roberts,* 468 U.S. 27, 104 S. Ct. 2916, 82 L. Ed. 2d 23 (1984).[4] In his dissent, Justice Rehnquist made the following assertion regarding *Vitale:* " 'I am reasonably sure that the Court did not intend to transmute the traditional double jeopardy analysis from an

---

[4] "In *Thigpen* v. *Roberts,* 468 U.S. 27, 104 S. Ct. 2916, 82 L. Ed. 2d 23 (1984), the defendant was initially charged with reckless driving, driving while his license was revoked, driving on the wrong side of the road, and driving while intoxicated, all offenses arising from a fatal automobile accident. After the defendant was convicted of these four misdemeanors and while his appeal was pending, the defendant was indicted for manslaughter based on the same accident, and was convicted. The defendant brought a habeas corpus action in the federal District Court, which held that the manslaughter prosecution violated the double jeopardy clause and that sub-

either "up or down" inquiry based on the evidence required to prove the statutory elements of a crime into a "substantial claim" inquiry based on the evidence the State introduced at trial.' [*Thigpen* v. *Roberts,* supra, 36] (Rehnquist, J., dissenting). The third reason is the fact that three justices of the United States Supreme Court dissented to the denial of certiorari in a case where the Supreme Court of Illinois held that the double jeopardy clause had been violated because the state intended to use the same factual basis which supported the first conviction as the basis for the second conviction. *People* v. *Zegart,* supra, 445. The dissent emphasized that courts were required to look to the statutory elements of the first and second charges, not to the similarities of facts in the prosecution's proof. *Illinois* v. *Zegart,* 452 U.S. 948, 951, 101 S. Ct. 3094, 69 L. Ed. 2d 961 (1981). (Burger, C. J., dissenting from denial of certiorari); see, e.g., *People* v. *Jackson,* supra." *State* v. *Lonergan,* supra, 373–74.

Like the Appellate Court, we find these reasons unpersuasive. First, although the United States Supreme Court in *Vitale* labeled the *Blockburger* test the "principal test" for determining whether two offenses are the same for purposes of barring successive prosecutions, the court did not state that it was *the* test. In fact, the court has stated: "The *Blockburger* test is not the only standard for determining whether

stitution of a felony charge covering the same conduct for which the defendant had been convicted of the misdemeanors violated the due process clause of the fourteenth amendment.

"The Fifth Circuit Court of Appeals affirmed, relying solely on the double jeopardy argument. *Roberts* v. *Thigpen,* 693 F.2d 132 (5th Cir. 1982). The United States Supreme Court affirmed on the due process ground, without deciding the double jeopardy issue. In dissent, Justice Rehnquist stated: 'I believe that the Court is obligated to confront the State's contention that the Court of Appeals misapplied the Double Jeopardy Clause of the Fifth Amendment in this case. The Court being unwilling to undertake that obligation, I turn to it in dissent. . . . ' " *State* v. *Lonergan,* 16 Conn. App. 358, 373 n.12, 548 A.2d 718 (1988).

successive prosecutions impermissibly involve the same offense." *Brown* v. *Ohio,* supra, 166 n.6.[5] Second, Justice Rehnquist's views regarding *Vitale* were set forth in dissent in *Thigpen,* and thus were not the expressed views of the majority of the court. Further, Justice Rehnquist's assertion that *Vitale* mandated a strict application of *Blockburger* is refuted by the fact that the *Vitale* court remanded the case for further factual clarification regarding what the state's proof was to be in the subsequent trial. If Justice Rehnquist were correct that only a *Blockburger* comparison of the statutory elements was prescribed by *Vitale,* then it would have made no difference what the state's proof would have been in the subsequent trial. See G. Thomas, "The Prohibition of Successive Prosecutions for the Same Offense: In Search of a Definition," 71 Iowa L. Rev. 323, 352 (1986). Finally, "the impact of the fact that three justices dissented to the denial of certiorari in [*Illinois* v. *Zegart,* supra,] is ameliorated by the impact of the denial itself. Although denials of certiorari by the United States Supreme Court have no precedential authority, the denial in *Zegart* certainly does not refute the argument that a majority of the court considers the *Blockburger* test as modified by inquiry into the repetition of proof to be the proper double jeopardy approach in successive prosecution cases. See, e.g., *People* v. *Gartner,* 143 Ill. App. 3d 113, 491 N.E.2d 927 (1986), overruled by *People* v. *Jackson,* supra." *State* v. *Lonergan,* supra, 375–76.

---

[5] Furthermore, the *Blockburger* test is not talismanic. For example, in single prosecution cases it is not definitive in determining whether multiple punishments may be imposed. Rather, it is only a rule of statutory construction, utilized in what is "essentially a factual inquiry as to legislative intent [rather than] a conclusive presumption of law." *Garrett* v. *United States,* 471 U.S. 773, 779, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985); see *Whalen* v. *United States,* 445 U.S. 684, 708, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980) (Rehnquist, J., dissenting).

In sum, the Appellate Court's extension of double jeopardy protection in successive prosecution cases in excess of that offered by *Blockburger* is not contrary to United States Supreme Court precedent, and therefore, does not constitute reversible error.

## II

Next, the state argues that the Appellate Court's failure to employ an unmodified *Blockburger* analysis was not in accord with this court's prior decisions. The state concedes that the question of whether to provide increased double jeopardy protection beyond that offered by *Blockburger* is one of first impression for this court. The state argues, however, that this court has "given a number of indications that it does not subscribe to the Appellate Court's interpretation of *Vitale*." We disagree. The state supports its assertion by citing *State* v. *McCall*, 187 Conn. 73, 90, 444 A.2d 896 (1982), and *State* v. *Truppi*, 182 Conn. 449, 468, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981), for the proposition that in single prosecution cases this court has held that evidence should not be examined. These cases are inapposite, however, as they only refer to *single* prosecution cases, and there is no dispute that *Vitale* reaffirmed the application of the traditional *Blockburger* test in single prosecution cases.[6] Therefore, this court's prior decisions have not indicated what analytical framework should be utilized to determine whether suc-

---

[6] As the Appellate Court noted: "No Connecticut cases, including the ones cited by the state, hold that *Blockburger* applies without modification in successive prosecution cases. In fact, each case cited by the state, and all Connecticut appellate court cases that have cited *Illinois* v. *Vitale*, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980), for the proposition that we do not examine the evidence at trial when applying the *Blockburger* test, involved single trial prosecutions. None of the cases revealed by our research on this issue involved successive prosecutions." *State* v. *Lonergan*, 16 Conn. App. 358, 371 n.9, 548 A.2d 718 (1988).

cessive prosecutions involve the "same offense" in violation of the double jeopardy clause.[7]

## III

Finally, the state contends that the Appellate Court's establishment of double jeopardy protection in successive prosecution cases beyond that offered by *Blockburger* fails to serve the purposes of the double jeopardy clause. We disagree. The ideal embodied in the double jeopardy clause is of ancient origins,[8] and its essential role in an individual's protection against government tyranny cannot be doubted.[9] Justice Black, in *Green* v. *United States,* 355 U.S. 184, 187–88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), wrote: "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State

[7] In addition, the state argues that the Appellate Court's decision is in conflict with this court's decisions granting the state broad discretion in how it proceeds against an accused. See *State* v. *Ellis,* 197 Conn. 436, 474, 497 A.2d 974 (1985); *State* v. *Silver,* 139 Conn. 234, 243–44, 93 A.2d 154 (1952). But, as the Appellate Court appropriately notes: "Although the state may elect to sever for trial charges arising out of the same transaction or occurrence, it must do so in full cognizance of the enhanced double jeopardy protection afforded to the defendant as a result of forcing him to withstand more than one criminal prosecution." *State* v. *Lonergan,* 16 Conn. App. 358, 379, 548 A.2d 718 (1988).

[8] "Historians have traced the origins of our constitutional guarantee against double jeopardy back to the days of Demosthenes, who stated that 'the laws forbid the same man to be tried twice on the same issue. . . .' " *Whalen* v. *United States,* 445 U.S. 684, 699, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980) (Rehnquist, J., dissenting), quoting 1 Demosthenes 589 (J. Vince trans. 4th Ed. 1970). "The date of Demosthenes quotation was 355 B.C., M. Friedland, Double Jeopardy 16 n.7 (1969), and the principle underlying the double jeopardy clause is, therefore, at least 234[4] years old." G. Thomas, "The Prohibition of Successive Prosecutions for the Same Offense: In Search of a Definition," 71 Iowa L. Rev. 323, 325 n.8 (1986).

[9] See *United States* v. *Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977) ("permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression"); *Benton* v. *Maryland,* 395 U.S. 784, 795, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969) ("the fundamental nature of the guarantee against double jeopardy can hardly be doubted").

with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

In short, "[s]uccessive-prosecution cases involve the core values of the Double Jeopardy Clause . . . . Where successive prosecutions are involved, the Double Jeopardy Clause protects the individual's interest in not having to twice 'run the gauntlet.' " *People* v. *Robideau,* 419 Mich. 458, 484, 355 N.W.2d 592 (1984). Thus, "[g]iven the multiplicity of offenses that may arise from a single criminal transaction, the formalistic *Blockburger* test, with its narrow focus on the technical elements of the offenses charged, is inadequate to vindicate this constitutional guarantee against retrial. The general test for determining whether successive prosecutions involve the 'same offense' is therefore a more flexible and pragmatic one, which focuses not on the formal elements of the two offenses but rather on the proof actually utilized to establish them."[10] *United States* v. *Ragins,* supra, 1188.

---

[10] The Supreme Court of Alaska has stated: "Although [the *Blockburger*] test has been widely used by the courts, it has been increasingly criticized as not coping satisfactorily with the problem it was designed to solve. Legislative refinement of an essentially unitary criminal episode into numerous separate violations of the law has resulted in a proliferation of offenses capable of commission by a person at one time and in one criminal transaction. Since each violation by definition will usually require proof of a fact which the others do not, application of the [*Blockburger*] test will mean that each offense is punishable separately. But as the separate violations multiply by legislative action, the likelihood increases that a defendant will actually be punished several times for what is really and basically one criminal act." *Whitton* v. *State,* 479 P.2d 302, 306 (Alaska 1970).

In fact, a commentator has noted that the *Blockburger* test would permit six successive trials for a single act of sexual intercourse (adultery, for-

Accordingly, the Appellate Court's conferral of expanded protection in successive prosecution cases clearly serves the purposes of the double jeopardy clause.

## IV

In conclusion, we adopt the reasoning of the Appellate Court and hold that in successive prosecution cases "if the same evidence offered to prove a violation of the offense charged in the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution, then prosecution of the second offense is barred on double jeopardy grounds, regardless of whether either offense requires proof of a fact that the other does not." *State* v. *Lonergan,* supra, 368. Applying this test to the present case, we further hold that the prosecution of the defendant for operating a motor vehicle while under the influence of liquor or drugs in violation of General Statutes § 14-227a is barred, under the facts of this case, as violative of the double jeopardy clause. Given the record before us, and the fact that the state has so conceded, it is evident that the state intends to relitigate the issue of whether the defendant was operating while under the influence of liquor.[11] The record clearly indi-

---

nication, bastardy, rape, incest, and impairing the morals of a minor). See note, "The Double Jeopardy Clause as a Bar to Reintroducing Evidence," 89 Yale L.J. 962, 967 n.27 (1980).

[11] Although the issue in the first prosecution was whether the defendant's conduct was in consequence of his "intoxication," and in the second prosecution the issue would be whether the defendant was operating a motor vehicle while "under the influence," as the Appellate Court and the trial court both correctly stated: " 'While it is possible to be under the influence of intoxicating alcohol while not being intoxicated, it is impossible to be intoxicated while not, at the same time, be[ing] under the influence of alcohol.' " *State* v. *Lonergan,* 16 Conn. App. 358, 361, 548 A.2d 718 (1988); see *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 349–50, 493 A.2d 184 (1985). Thus, the issue of whether the defendant was operating "under the influence" was necessarily litigated in the first trial.

cates that in the second prosecution for operating while under the influence the state will rely on and seek to prove the same act of operating while intoxicated that was necessary to prove the manslaughter charge in the first prosecution. Thus, since the defendant has already been acquitted of conduct that is here shown to be a necessary element of the less serious crime for which he has been charged, his claim of double jeopardy is substantial under *In re Nielsen,* supra, and its progeny and, therefore, this second prosecution is barred on double jeopardy grounds.

The judgment of the Appellate Court is affirmed.

In this opinion HEALEY, COVELLO and HULL, Js., concurred.

CALLAHAN, J., dissenting. I disagree with the majority's holding that, in a successive prosecution case, two offenses can be considered the "same offense" for double jeopardy purposes where the same evidence or conduct proves both offenses even though the same two offenses would *not* be considered the same offense if brought in a single prosecution. I would reverse the Appellate Court and hold that the *Blockburger* test should be applied in successive prosecution cases to determine what constitutes the "same offense" for double jeopardy purposes.

*Illinois* v. *Vitale,* 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980), affirmed that the *Blockburger* test, as set forth in *Brown* v. *Ohio,* 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), is "the principal test for determining whether two offenses are the same for purposes of barring successive prosecutions. Quoting from *Blockburger* v. *United States,* 284 U.S. 299, 304 [52 S. Ct. 180, 76 L. Ed. 306] (1932), which in turn relied on *Gavieres* v. *United States,* 220 U.S. 338, 342–343 [31 S. Ct. 421, 55 L. Ed. 489] (1911), [the United States

Supreme Court] held that ' "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." ' 432 U.S., at 166. [The United States Supreme Court] recognized that the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." *Illinois* v. *Vitale,* supra, 416. "[T]he *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli* v. *United States,* 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975). "The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the [less serious offense] to establish an element of [the more serious offense] would not be sufficient to bar the latter prosecution." *Illinois* v. *Vitale,* supra, 419.[1] Thus, the United States Supreme Court has repeatedly recognized that a second prosecution will not be barred on double jeopardy grounds simply because the evidence offered in the second prosecution may be duplicative of the evidence admitted in the first.

In *Brown* v. *Ohio,* the court outlined the policy behind the double jeopardy clause in successive prosecution cases. "Where successive prosecutions are at stake, the guarantee serves 'a constitutional policy of finality for

---

[1] "The 'same evidence' test is not constitutionally required. It . . . has never been squarely held by this Court to be the required construction of the constitutional phrase 'same offense' in a case involving multiple trials; indeed, in that context it has been rejected. See *In re Nielson,* 131 U.S. 176 [9 S. Ct. 672, 33 L. Ed. 118 (1889)], discussed in *Abbate* v. *United States,* [359 U.S. 187, 201, 79 S. Ct. 666, 674, 3 L. Ed. 2d 729 (1959)]." *Ashe* v. *Swenson,* 397 U.S. 436, 452–53, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) (Brennan, J., concurring).

the defendant's benefit.' . . . That policy protects the accused from attempts to relitigate the *facts underlying a prior acquittal* . . . and from attempts to secure additional punishment after a prior conviction and sentence . . . ." (Emphasis added, citations omitted.) *Brown* v. *Ohio,* supra, 165–66. Here, however, the state is not attempting to relitigate the facts underlying the prior acquittal. "The trial court [in the first prosecution] ruled that the state had failed to prove beyond a reasonable doubt that the defendant's alleged intoxication had caused the death of [the victim] and, accordingly, granted the defendant's motion for judgment of acquittal." *State* v. *Lonergan,* 16 Conn. App. 358, 360, 548 A.2d 718 (1988).

The sole issue determined by the trial court was that the defendant's alleged intoxication was not the cause of the death of the victim as required for manslaughter in the second degree with a motor vehicle. The trial court never decided any of the elements of operating a motor vehicle while under the influence. Thus, the conduct of which the defendant was acquitted is not an element of the less serious crime for which the state now desires to prosecute him.[2]

While I agree that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense"; *Green* v. *United States,* 355 U.S. 184, 187, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), this principle only

---

[2] The majority cites footnote 6 in *Brown* v. *Ohio,* 432 U.S. 161, 166–67, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), to support its conclusion that the *Blockburger* rule is not the sole test for determining whether successive prosecutions involve the same offense. In *Brown,* the court stated: "[E]ven if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues *already resolved by the first.*" (Emphasis added.) *Brown* v. *Ohio,* supra, 166–67 n.6. As mentioned, however, in this case the state is not attempting to relitigate facts already resolved by the first prosecution.

applies when the state is attempting to relitigate *the same offense.* "[T]he United States Supreme Court has consistently declined to hold that double jeopardy requires the prosecution 'to join at one *trial* all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction.' (Emphasis added.) *Ashe* v. *Swenson,* [397 U.S. 436, 453–54, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)] (Brennan, J., concurring) . . . ." *State* v. *Ellis,* 197 Conn. 436, 474, 497 A.2d 974 (1985).

Under the majority's analysis, the two offenses, operating a motor vehicle while under the influence and manslaughter in the second degree with a motor vehicle, constitute two different offenses and can be punished separately if the state brings both charges in a single trial. If, however, the state chooses to prosecute the crimes in two separate trials, they are considered the "same offense" apparently even if the first trial did not resolve the elements necessary to prove the second offense. Thus, the definition of what constitutes the "same offense" for double jeopardy purposes will vary depending upon whether the charges are brought in a single rather than a successive prosecution. The practical result of the majority's opinion will be to force the state to bring both charges in the same proceeding; a result previously not required by the double jeopardy clause. The policies underlying the double jeopardy clause do not support this analysis and I cannot agree with such an inconsistent approach.

Accordingly, I dissent.