# STATE OF CONNECTICUT *v.*
# WASHINGTON ALVAREZ
## (SC 16406)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 29—officially released August 28, 2001

*Robert S. Bello*, with whom, on the brief, were *Thomas M. Cassone* and *Lawrence M. Lapine*, for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *James Bernardi,* senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this interlocutory appeal is whether the defendant's prosecution for manslaughter in the first degree is barred by the federal constitutional prohibition against double jeopardy where he pleaded guilty to assault in the first degree and was convicted and sentenced on that charge, only later to be charged with manslaughter in the first degree after the victim of the assault died following the defendant's conviction. The defendant appeals[1] from the decision of the trial court denying his motion to dismiss the charge of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[2] We affirm the decision of the trial court.

The defendant, Washington Alvarez, claims that, because he already had entered a plea of guilty to, and had been found guilty of, inter alia, the crime of assault in the first degree in connection with the beating of the victim, Mathew Kosbob, the trial court improperly denied his motion to dismiss the subsequent charge of manslaughter in the first degree. The manslaughter information was filed by the state following the victim's death, from the consequences of the assault, approximately eighteen months after the defendant's assault conviction. Specifically, the defendant contends that this prosecution for manslaughter in the first degree

[1] The defendant appealed from the ruling of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

violates the prohibition against double jeopardy because it: (1) subjects him to successive prosecutions for the same offense; and (2) subjects him to multiple punishments for the same offense. In addition, the defendant also claims that the prosecution for manslaughter violates his right to due process in that he has a right to the sentence to which he agreed when he pleaded guilty to the initial charges of assault in the first degree, kidnapping and conspiracy because he did so with the expectation that he would not be prosecuted on any additional charges if the victim later died. For the reasons that follow, we disagree with the defendant's claims.

In 1997, the defendant was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (4),[3] kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A),[4] and

---

[3] General Statutes § 53a-59 (a) provides: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person; or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person; or (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[4] General Statutes § 53a-92 (a) provides: "A person is guilty of kidnapping in the first degree when he abducts another person and: (1) His intent is to compel a third person (A) to pay or deliver money or property as ransom or (B) to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function."

conspiracy to commit assault in the first degree and kidnapping in the first degree in violation of General Statutes §§ 53a-48 (a),[5] 53a-92 (a) (2) (A) and 53a-59 (a) (1). These charges arose out of an incident involving the victim that had occurred in July, 1995. The defendant pleaded guilty to the charged offenses, and he was sentenced to a total effective sentence on all convictions of twenty-five years, suspended after fifteen years, followed by five years probation.

After the defendant's conviction on those charges, the victim died in November, 1998, from the consequences of the 1995 assault. The state then filed the information that is the subject of the motion to dismiss in the present case, charging the defendant with manslaughter in the first degree in violation of § 53a-55 (a) (1). The defendant moved to dismiss this second prosecution on the grounds that it violated principles of double jeopardy and due process under the federal and state constitutions.[6] The trial court denied the defendant's motion to dismiss, and this interlocutory appeal followed.[7]

The following facts and procedural history, as set forth by the trial court in its memorandum of decision

[5] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[6] Because the defendant has not presented a separate analysis of his double jeopardy claim under the state constitution, we confine our analysis to the application of the federal constitution's double jeopardy bar. See, e.g., *State* v. *Colton*, 234 Conn. 683, 703, 663 A.2d 339 (1995); *State* v. *Nixon*, 231 Conn. 545, 550 n.4, 651 A.2d 1264 (1995); *State* v. *DePastino*, 228 Conn. 552, 571, 638 A.2d 578 (1994).

[7] "In criminal cases, as an exception to the general rule, colorable claims of double jeopardy may be appealed before a final judgment has been rendered by the trial court." *State* v. *James*, 247 Conn. 662, 670 n.10, 725 A.2d 316 (1999), citing *State* v. *Seravalli*, 189 Conn. 201, 204–205, 445 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983).

denying the motion to dismiss, are relevant to this appeal. "[The defendant], together with [three] others, had been arrested on July 29, 1995, because of an assault on the victim . . . . The assault occurred in the evening hours of July 28, 1995. Among other injuries resulting from the assault, the victim sustained a severe cranio-cerebral trauma and, shortly after the assault, lapsed into a coma of several months duration. He slowly regained some consciousness in mid-December of 1995, but remained hospitalized in a 'vegetative' state. He was fed intravenously and breathed with the assistance of a respirator through a tracheal tube. He lingered as a patient in a rehabilitative hospital in this condition until his death on November 23, 1998. The autopsy listed the cause of death as 'delayed medical complications of craniocerebral trauma' and the manner of death as [a] 'homicide.'

"In March, 1997, while the victim was still hospital-ized, the state filed [an] amended [information] against [the defendant] charging the crimes of (1) assault in the first degree while aided by two or more persons actually present and by means of a dangerous instru-ment; (2) kidnapping in the first degree; and (3) conspir-acy to commit assault in the first degree and kidnapping in the first degree.

"On March 21, 1997, [the defendant] entered a plea of guilty to each of the three counts. On June 26, 1997, [the defendant] was sentenced on the kidnapping in the first degree count to incarceration for twenty-five years, execution suspended after fifteen years, and probation on the unexecuted portion for five years. On the counts of assault in the first degree and conspiracy to commit assault in the first degree, the defendant was sentenced to fifteen years on each count to run concurrently with the kidnapping count, [for] a total effective sentence of twenty-five years, suspended after fifteen years, and

probation on the unexecuted portion of the sentence for five years."

The trial court also stated: "After the death of the victim . . . the state secured the issuance of [an] arrest [warrant] charging [the defendant] with the crime of manslaughter in the first degree. It is the information filed on the basis of [this warrant], alleging that with intent to cause serious physical injury to [the victim], he caused the death of [the victim], that [the defendant] seeks to have dismissed." The trial court determined that the subsequent prosecution for manslaughter did not violate the defendant's constitutional protection against double jeopardy or violate his due process rights.

I

The defendant first claims that his prosecution for manslaughter in the first degree violates the prohibition against double jeopardy because it subjects him both to a successive prosecution and a multiple punishment for the same offense. We disagree with his successive prosecution claim and do not decide his multiple punishment claim.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: '[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . .' The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. See *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). 'Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, § 9, include protection against double jeopardy. *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).' *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990),

cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); see also *State* v. *Nixon,* 231 Conn. 545, 550, 651 A.2d 1264 (1995) (right to protection against double jeopardy is implicit in due process guarantees of state constitution)." *State* v. *Crawford,* 257 Conn. 769, 774, 778 A.2d 947 (2001).

"We have recognized that the Double Jeopardy Clause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. *North Carolina* v. *Pearce,* 395 U.S. 711, 717 [89 S. Ct. 2072, 23 L. Ed. 2d 656] (1969) . . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. *United States* v. *Wilson,* 420 U.S. 332, 339 [95 S. Ct. 1013, 43 L. Ed. 2d 232] (1975). The Clause operates as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent. *United States* v. *DiFrancesco,* 449 U.S. 117, 136 [101 S. Ct. 426, 66 L. Ed. 2d 328] (1980)." (Internal quotation marks omitted.) *Schiro* v. *Farley,* 510 U.S. 222, 229–30, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994). In the present case, the defendant makes both a successive prosecution and a multiple punishment claim.

A

We first turn to the defendant's claim that the state's prosecution of the manslaughter charge violates the prohibition against double jeopardy because it subjects him to a successive prosecution for the same offense. Specifically, the defendant contends that: (1) manslaughter in the first degree constitutes the same offense as assault in the first degree for double jeopardy

purposes;[8] and (2) in the alternative, the prosecution for manslaughter in the first degree should be prohibited under the principles enunciated in *State* v. *Lonergan*, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990), because the same evidence that was offered to prove assault in the first degree in the defendant's initial prosecution will be the sole evidence offered to prove manslaughter in the first degree in the second prosecution.

"The traditional approach to analyzing whether two offenses constitute the same offense [for double jeopardy purposes] was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . *State* v. *Greco*, [216 Conn. 282, 291, 579 A.2d 84 (1990)]." (Internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 100, 675 A.2d 866 (1996). "The issue, though essentially constitutional, becomes one of statutory construction. *State* v. *Rawls*, 198 Conn. 111, 120, 502 A.2d 374 (1985); *State* v. *Madera*, 198 Conn. 92, 109, 503 A.2d 136 (1985)." (Internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 8–9, 629 A.2d 386 (1993).

Application of the *Blockburger* test to the facts of this case leads us to conclude that manslaughter in the first degree is not the same offense as assault in the first degree for double jeopardy purposes. In the information filed after the victim's death, the state charged the defendant with manslaughter in the first degree under

---

[8] The defendant further claims that his prosecution for manslaughter in the first degree is barred by double jeopardy because that charge constitutes the same offense as assault in the first degree for double jeopardy purposes since both crimes are classified as class B felonies. The defendant cites no relevant case law in support of his position.

§ 53a-55 (a) (1).[9] Section 53a-55 (a) (1) requires the state to prove that, with intent to cause serious physical injury, the defendant caused the death of the victim. In the amended information in which the defendant was initially charged with assault in the first degree in violation of § 53a-59 (a) (1) and (4), the state had alleged that the defendant "with intent to cause serious physical injury to [the victim] while aided by two or more persons actually present did cause serious physical injury [to the victim] . . . by means of a dangerous instrument . . . ." Manslaughter in the first degree requires proof that the defendant caused the death of the victim, and assault in the first degree, as previously charged against the defendant in the present case, requires proof that the defendant caused serious physical injury while aided by two or more persons and by means of a dangerous instrument. As charged in the present case, manslaughter in the first degree and assault in the first degree each require proof of an element that the other does not. We conclude, therefore, that manslaughter in the first degree and assault in the first degree are distinct offenses for purposes of double jeopardy under *Blockburger*.

The defendant further claims that regardless of whether manslaughter in the first degree and assault in the first degree are the same offense under the *Blockburger* test, his prosecution for the charge of manslaughter in the first degree violates the prohibition against double jeopardy under the principles enunciated in *State* v. *Lonergan,* supra, 213 Conn. 74. We disagree.

In *Lonergan,* we adopted the reasoning of the Appellate Court and concluded that "if the same evidence offered to prove a violation of the offense charged in

---

[9] At the time of this interlocutory appeal, the state had filed only a short form information for the charge of manslaughter in the first degree.

the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution, then prosecution of the second offense is barred on double jeopardy grounds, regardless of whether either offense requires proof of a fact that the other does not." (Internal quotation marks omitted.) Id., 92. In support of our conclusion, we recognized that "[s]uccessive-prosecution cases involve the core values of the Double Jeopardy Clause . . . . Where successive prosecutions are involved, the Double Jeopardy Clause protects the individual's interest in not having to twice run the gauntlet. . . . Thus, [g]iven the multiplicity of offenses that may arise from a single criminal transaction, the formalistic *Blockburger* test, with its narrow focus on the technical elements of the offenses charged, is inadequate to vindicate this constitutional guarantee against retrial. The general test for determining whether successive prosecutions involve the same offense is therefore a more flexible and pragmatic one, which focuses not on the formal elements of the two offenses but rather on the proof actually utilized to establish them." (Citation omitted; internal quotation marks omitted.) Id., 91.

Our conclusion in *Lonergan* was based on our analysis of a series of United States Supreme Court cases that culminated in *Illinois* v. *Vitale*, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980). We recognized that, in *Illinois* v. *Vitale*, supra, 419–20, the Supreme Court "indicated that there are two ways of detecting double jeopardy violations in successive prosecution cases. First, the *Blockburger* test may categorize the two offenses as being the same. Second, an examination of the evidence may be undertaken to determine if the second offense requires proof that was already offered to prove the first offense." *State* v. *Lonergan*, supra, 213 Conn. 84.

Ten years after the Supreme Court's decision in *Vitale* and one year after our decision in *Lonergan*, the United States Supreme Court again addressed the appropriate test for double jeopardy in successive prosecution cases in *Grady* v. *Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990). The court in *Grady* stated that "[i]n *Illinois* v. *Vitale*, [supra, 447 U.S. 419–20], we suggested that even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution. Today we adopt the suggestion set forth in *Vitale*. We hold that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady* v. *Corbin*, supra, 510. In addition to *Vitale*, the court in *Grady* also relied on *Harris* v. *Oklahoma*, 433 U.S. 682, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977), *Brown* v. *Ohio*, 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), *Ashe* v. *Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), and *In re Nielsen*, 131 U.S. 176, 9 S. Ct. 672, 33 L. Ed. 118 (1889). See *Grady* v. *Corbin*, supra, 519–20.

In 1993, however, only three years after *Grady* was decided, and four years after our decision in *Lonergan*, the United States Supreme Court overruled *Grady*. See *United States* v. *Dixon*, 509 U.S. 688, 704, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993). In *Dixon*, the Supreme Court reinstated the *Blockburger* test as the *exclusive* means of determining whether two charges are the same for double jeopardy purposes. See id., 704–12. The court in *Dixon* "concluded . . . that *Grady* must be overruled. Unlike *Blockburger* analysis, whose definition of what prevents two crimes from being the 'same

offence,' U.S. Const., [amend. V], has deep historical roots and has been accepted in numerous precedents of this Court, *Grady* lacks constitutional roots. The 'same-conduct' rule [the court in *Grady*] announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common law understanding of double jeopardy." *United States* v. *Dixon*, supra, 704.

"Having encountered today yet another situation in which the pre-*Grady* understanding of the Double Jeopardy Clause allows a second trial, though the same-conduct test would not, we think it time to acknowledge what is now, three years after *Grady*, compellingly clear: [That decision] was a mistake. We do not lightly reconsider a precedent, but, because *Grady* contradicted an unbroken line of decisions, contained less than accurate historical analysis, and has produced confusion, we do so here. *Solorio* v. *United States*, 483 U.S. 435, 439, 442, 450 [107 S. Ct. 2924, 97 L. Ed. 2d 364] (1987). Although stare decisis is the preferred course in constitutional adjudication, when governing decisions are unworkable or are badly reasoned, this Court has never felt constrained to follow precedent. *Payne* v. *Tennessee*, 501 U.S. 808, 827 [111 S. Ct. 2597, 115 L. Ed. 2d 720] (1991) (quoting *Smith* v. *Allwright*, 321 U.S. 649, 665 [64 S. Ct. 757, 88 L. Ed. 987 (1943), reh. denied, 322 U.S. 769, 64 S. Ct. 1052, 88 L. Ed. 1594 (1944)], and collecting examples). We would mock stare decisis and only add chaos to our double jeopardy jurisprudence by pretending that *Grady* survives when it does not. We therefore accept the Government's invitation to overrule *Grady* . . . ." (Internal quotation marks omitted.) *United States* v. *Dixon*, supra, 509 U.S. 711–12.

Until the present case, we have not had occasion to revisit our decision in *State* v. *Lonergan*, supra, 213 Conn. 74, since the United States Supreme Court decided *Dixon*. Although we recognize that " '[t]he doctrine of stare decisis counsels that a court should not

overrule its earlier decisions unless the most cogent reasons and inescapable logic require it' "; *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 251, 756 A.2d 1264 (2000); we conclude that, in light of *Dixon*, we must overrule *Lonergan*. An examination of *Lonergan* demonstrates that our decision therein was controlled by the same federal double jeopardy precedent that the United States Supreme Court examined in *Dixon* and found inconsistent with *Grady*.

In adopting the reasoning of the Appellate Court in *Lonergan*, we concluded that the Appellate Court had engaged in an accurate analysis of federal double jeopardy precedent, including *Illinois* v. *Vitale*, supra, 447 U.S. 410; *Brown* v. *Ohio*, supra, 432 U.S. 161; *Harris* v. *Oklahoma*, supra, 433 U.S. 682; *Ashe* v. *Swenson*, supra, 397 U.S. 436; and *In re Nielsen*, supra, 131 U.S. 176. See *State* v. *Lonergan*, supra, 213 Conn. 79–85. The court in *Dixon* examined this same body of federal double jeopardy precedent and concluded that the *Blockburger* test is the exclusive means of determining whether two charges constitute the same offense for federal double jeopardy purposes. The court in *Dixon* further determined that the test established in *Grady*, which is the same as that which we adopted in *Lonergan*, was "wholly inconsistent with earlier Supreme Court precedent and with the clear common law understanding of double jeopardy." *United States* v. *Dixon*, supra, 509 U.S. 704. Because this is an issue of federal constitutional law, we are bound by *Dixon*. We conclude, therefore, consistent with *Dixon*, that the *Blockburger* test is the exclusive means for determining whether two charges constitute the same offense for double jeopardy purposes.

At oral argument before this court, the defendant claimed that *Dixon* does not require this court to overrule *Lonergan*. The defendant argued that *Dixon* only overruled *Grady*, and that *Lonergan* was not based on

*Grady* but on earlier federal double jeopardy precedent. We disagree with the defendant's reasoning. Although *Lonergan* was not based on *Grady* because *Grady* was decided one year after *Lonergan*, both cases were based on the same body of federal double jeopardy precedent. In overruling *Grady*, the Supreme Court in *Dixon* clearly stated that this body of precedent does not support the same evidence test and that the *Blockburger* test is the exclusive test for determining whether two charges are the same offense for federal double jeopardy purposes. See *United States* v. *Dixon*, supra, 509 U.S. 704–12. We conclude, therefore, that *Dixon* mandates that we overrule *Lonergan* and reinstate the *Blockburger* test as the exclusive test for determining whether two offenses are the same offense for double jeopardy purposes.

In the present case, we have determined that manslaughter in the first degree is separate and distinct from assault in the first degree under the *Blockburger* analysis. We conclude, therefore, that the state's prosecution of the defendant for manslaughter in the first degree does not violate the federal constitutional prohibition against double jeopardy.

## B

The defendant in this interlocutory appeal further claims that his prosecution for manslaughter in the first degree violates the prohibition against double jeopardy because it constitutes multiple punishments for the same offense. We fully addressed and rejected this identical claim in a companion case also decided today. See *State* v. *Crawford*, supra, 257 Conn. 769. We held in *Crawford* that a multiple punishment claim, like the one raised in the present case, may not be appealed interlocutorily. Id., 780. That is what the defendant attempts to do here. Our decision in *Crawford* is dispositive of this claim.

## II

The defendant also claims in this interlocutory appeal that the prosecution for manslaughter in the first degree violates his rights to due process.[10] We decline to address this due process claim in this interlocutory appeal.

"We have been disinclined . . . to extend the privilege of an interlocutory appeal in criminal cases beyond the double jeopardy circumstance. This reluctance stems principally from our concern that to allow such appeals would greatly delay the orderly progress of criminal prosecutions in the trial court, as vividly illustrated in the present instance where more than two years have elapsed while this appeal has been pending. [T]he opportunity to appeal in such a situation might well serve the purpose of parties who desire for their own ends to postpone the final determination of the issues. *State* v. *Kemp*, 124 Conn. 639, 647, 1 A.2d 761 (1938). It has been widely recognized that strict adherence to the final judgment rule is necessary in criminal cases because the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law. *DiBella* v. *United States*, 369 U.S. 121, 126, 82 S. Ct. 654, 7 L. Ed. 2d 614 (1962); see *Abney* v. *United States*, [431 U.S. 651, 657, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1997)]; *State* v. *Seravalli*, [189 Conn. 201, 204, 455 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983)]; *State* v. *Powell*, 186 Conn. 547, 551, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut*, 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982)." (Internal quotation marks omitted.) *In re Juvenile Appeal (85-AB)*, 195 Conn. 303, 309, 488 A.2d

---

[10] The defendant does not specify whether this claim is raised under the federal or the state constitution. We treat the defendant's claim, therefore, as limited to the federal constitution.

778 (1985). The defendant's due process claim is distinct from his double jeopardy claim and is not raised appropriately at this time because of the absence of a final judgment. We decline, therefore, to review the defendant's due process claim in this interlocutory appeal.

The decision of the trial court is affirmed.

In this opinion the other justices concurred.