NOEL DAVILA *v.* COMMISSIONER OF CORRECTION
(AC 29546)

Flynn, C. J., and Lavine and Hennessy, Js.

Argued April 21—officially released August 4, 2009

*Michael Oh*, special public defender, for the appellant (petitioner).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Gerard P. Eisenman*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, Noel Davila, appeals from the judgment of the habeas court, *Hon. Anthony V. DeMayo*, judge trial referee, denying his third amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he was not denied the effective assistance of trial and appellate counsel when his attorneys failed to move to have the charges in the petitioner's second criminal trial dismissed on double jeopardy grounds and failed to present this claim in his direct appeal, respectively. We conclude that the petitioner's second trial, on charges that the jury could not agree on in his first trial, was a continuing prosecution and not a successive prosecution of the kind once barred by the now overruled *State* v. *Lonergan*, 213 Conn. 74, 566 A.2d 677

(1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990), overruled by *State* v. *Alvarez,* 257 Conn. 782, 794–95, 778 A.2d 938 (2001). We, therefore, affirm the judgment of the habeas court.

This court recounted the facts underlying the petitioner's appeal in our decision concerning his direct appeal. "Angela Velez, Julio Alvarez and five minor children resided in a first floor apartment at 203 Calhoun Avenue in Bridgeport. On the afternoon of May 1, 1999, the [petitioner], wearing a black, long sleeved, hooded sweatshirt, appeared at the back door of the victims' apartment and asked Velez if he could speak to Alvarez. Velez refused the [petitioner's] request because Alvarez was having lunch at that time. The [petitioner] then brandished a pistol and attempted to force his way into the apartment. Velez called out to Alvarez that somebody was trying to break into the apartment. Unsuccessful in his attempt to gain entry, the [petitioner] fired several gunshots into the apartment through various first floor windows. During the shooting, Velez gathered the five children together and fled the apartment, bringing the children to a nearby liquor store. The owner of the liquor store called the police, who arrived at the scene shortly thereafter.

"The [petitioner], meanwhile, fled on foot to his sister's apartment, which was not far from the scene of the shooting. Once at the apartment, the [petitioner] changed shirts and hid the pistol under the cushions of the living room sofa. Police apprehended the [petitioner] at the apartment, where they also recovered the weapon and the sweatshirt." *State* v. *Davila,* 75 Conn. App. 432, 435, 816 A.2d 673, cert. denied, 264 Conn. 909, 826 A.2d 180 (2003), cert. denied, 543 U.S. 897, 125 S. Ct. 92, 160 L. Ed. 2d 166 (2004).

The petitioner was charged, in an amended substitute information filed February 4, 2000, with five counts of

risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (1), and one count each of the following: reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a); criminal possession of a firearm in violation of General Statutes § 53a-217 (a); carrying a pistol without a permit in violation of General Statutes § 29-35 (a); attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1); attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a); and possession of narcotics in violation of General Statutes § 21a-279 (a). Following a trial, on February 9, 2000, the jury found the petitioner guilty of possession of narcotics and not guilty of attempt to commit murder. The jury deadlocked on the remaining charges as to which the court, *Hauser, J.*, declared a mistrial. The court sentenced the petitioner to a total effective term of five years in prison, to run consecutively to a five year sentence that the petitioner currently was serving for a violation of probation.

By way of an amended substitute information filed January 29, 2001, the state charged the petitioner with the same May 1, 1999 crimes on which the jury had deadlocked: five counts of risk of injury to a child, one count of reckless endangerment in the first degree, one count of criminal possession of a firearm, one count of carrying a pistol without a permit and one count of attempt to commit assault in the first degree. Prior to commencement of evidence in the second trial, the petitioner's trial counsel, Wayne Keeney, filed a motion in limine to preclude from the second trial facts that were litigated in the first trial pertaining to the charge of attempt to commit murder on the ground of collateral estoppel. Keeney specifically argued that the state should be prohibited from using such facts in support of its attempt to commit assault charge in the second trial. Following oral argument, the court, *Hon. Howard*

*T. Owens, Jr.*, judge trial referee, granted the motion and ordered that the prosecution would be "precluded from offering any evidence during its case-in-chief that the [petitioner] intended to kill the alleged victim." Four days later, Judge Owens reconsidered his ruling and denied the motion in limine. The court stated that in entering its order, it had been "unaware that at the first trial the [petitioner] had been tried on the charge of attempted assault in the first degree and that this charge resulted in a mistrial."

On January 30, 2001, after a second trial, the jury found the petitioner not guilty of attempt to commit assault in the first degree and guilty of the other charges against him. The court thereafter sentenced the petitioner to a total effective term of fifteen years in prison, with eight years of special parole, to run consecutively to the petitioner's previous sentences.

The petitioner filed separate appeals to this court from his convictions in both trials, and we ordered the appeals consolidated. See *State* v. *Davila*, supra, 75 Conn. App. 434 n.1. The petitioner, represented by attorney David B. Rozwaski, claimed on appeal that there was insufficient evidence to support his conviction of risk of injury to a child and reckless endangerment in the first degree. Id., 434–35. The appeal also challenged the court's denial of his motion in limine prior to the second trial. Id., 435.[1] We deemed the evidence sufficient to support the petitioner's conviction; id., 436–40; but declined to review the petitioner's claim regarding the denial of his motion in limine, concluding that the issue was moot due to the fact that the petitioner had been acquitted in the second trial of the charge of attempt to commit assault in the first degree. Id., 441.

---

[1] The petitioner further challenged his conviction of criminal possession of a firearm, carrying a pistol without a permit and possession of narcotics, but we deemed these claims abandoned due to the petitioner's failure to brief them. *State* v. *Davila*, supra, 75 Conn. App. 434 n.1.

On March 28, 2007, the petitioner filed a third amended petition for a writ of habeas corpus. The petition's first and second counts alleged ineffective assistance of counsel by Keeney and Rozwaski, respectively, specifically citing their failure to brief and to argue a claim that the second prosecution placed the petitioner in double jeopardy due to the acquittal in the first trial of the charge of attempt to commit murder. Counts three and four alleged that the court improperly failed to find that the second prosecution was barred by operation of the fifth and fourteenth amendments to the United States constitution. In a memorandum of decision filed December 11, 2007, Judge DeMayo denied the petition. The court concluded that under *State* v. *James*, 247 Conn. 662, 725 A.2d 316 (1999) (en banc), the petitioner's retrial following the initial mistrial on the same charges did not violate his right not to be placed in double jeopardy. Therefore, the court found that the petitioner's trial and appellate counsel could not have provided ineffective assistance for their failure to raise the issue.[2] The court granted the petition for certification to appeal, and the present appeal followed.

On appeal, the petitioner challenges the habeas court's determination that he was not denied the effective assistance of counsel at either the trial or appellate level. His argument may be summarized as follows. Prior to our Supreme Court's ruling in *State* v. *Lonergan*, supra, 213 Conn. 74, our courts applied the traditional double jeopardy analysis originally formulated by the United States Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Under *Blockburger* and its progeny, a second prosecution was barred by double jeopardy if the crime charged in the latter prosecution did not require proof

[2] The court dismissed counts three and four of the petition on the ground that the claims contained therein properly were subjects of a direct appeal, not a petition seeking habeas relief.

of an element distinct from a charged crime for which the defendant previously had been put to trial and convicted or acquitted. See id., 304. In *Lonergan*, our Supreme Court extended double jeopardy protection to encompass not only the "same elements" analysis of *Blockburger*, but also the "same conduct" test intimated by the United States Supreme Court in *Illinois* v. *Vitale*, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980).[3] Under this analysis, in successive prosecution cases, "if the same evidence offered to prove a violation of the offense charged in the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution, then prosecution of the second offense is barred on double jeopardy grounds, regardless of whether either offense requires proof of a fact that the other does not." (Internal quotation marks omitted.) *State* v. *Lonergan*, supra, 92.

In *State* v. *Alvarez*, 257 Conn. 782, 794–95, 778 A.2d 938 (2001), decided August 28, 2001, our Supreme Court explicitly overruled its decision in *Lonergan* and, following the United States Supreme Court precedent announced in *United States* v. *Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993), "reinstate[d] the *Blockburger* test as the exclusive test for determining whether two offenses are the same offense for double jeopardy purposes." *State* v. *Alvarez*, supra, 795. The petitioner contends that during the pertinent time period—May 1, 1999, the date of the incident, through January 30, 2001, when the jury in the second trial delivered its verdict—Connecticut law required courts

---

[3] In *Illinois* v. *Vitale*, supra, 447 U.S. 410, the United States Supreme Court "suggested that even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution." *Grady* v. *Corbin*, 495 U.S. 508, 510, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990), overruled by *United States* v. *Dixon*, 509 U.S. 688, 712, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

to apply the double jeopardy analysis of *Lonergan.* Applying this analysis to the facts of his case, he maintains, the state was barred from bringing any of the charges in the second trial because the evidence to support those charges was the identical evidence used in the first trial. The failure of the petitioner's trial and appellate counsel to raise this claim, he argues, rendered their efforts ineffective and, therefore, constitutionally defective.

We begin our analysis with the following standard of review and principles of law. Facts found by a habeas court may not be disturbed on appellate review unless they are clearly erroneous. *George M.* v. *Commissioner of Correction,* 290 Conn. 653, 659, 966 A.2d 179 (2009). The question of whether the representation received by a defendant in a criminal trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington,* 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Accordingly, that question requires plenary review by this court rather than application of the clearly erroneous standard. *Johnson* v. *Commissioner of Correction,* 288 Conn. 53, 62, 951 A.2d 520 (2008).

Under the well known standard established by *Strickland* v. *Washington,* supra, 466 U.S. 687, a petitioner alleging ineffective assistance of counsel must establish that "(1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction,* supra, 288 Conn. 63.

The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be subject for the same offense to be twice put in jeopardy

of life or limb . . . ." U.S. Const., amend. V. The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Connecticut constitution has no specific double jeopardy provision; however, our Supreme Court has held that "the due process guarantees of [the Connecticut constitution] include protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 27, 912 A.2d 992 (2007). The common-law protection against double jeopardy incorporated into our state constitution "mirrors, rather than exceeds, the federal constitutional protection." (Internal quotation marks omitted.) *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005). The double jeopardy clause secures several protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Internal quotation marks omitted.) *State* v. *Alvaro F.*, 291 Conn. 1, 6, 966 A.2d 712 (2009).

Prior to our Supreme Court's decision in *State* v. *Lonergan*, supra, 213 Conn. 74, our courts applied the double jeopardy analysis that originated in *Blockburger* v. *United States*, supra, 284 U.S. 299. The specific issue under review in *Blockburger* was whether several offenses charged in a single prosecution were sufficiently distinct to allow the imposition of multiple sentences without violating the double jeopardy clause. Id., 304. The court concluded: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. The test

emphasizes and requires analysis of the elements of the crimes charged: "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli* v. *United States*, 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975). The United States Supreme Court eventually held that the *Blockburger* test applied not only to charges brought in a single prosecution but to charges in successive prosecution cases as well. See *Brown* v. *Ohio*, 432 U.S. 161, 166, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977).

The preceding provides the proper legal background for the present case. We now proceed to an analysis of *Lonergan*, the linchpin of the petitioner's claim on appeal. In *State* v. *Lonergan*, supra, 213 Conn. 76, the defendant was arrested and charged with operating a motor vehicle under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a after his vehicle collided with a motorcycle. The day following the accident, the operator of the motorcycle died as a result of injuries he sustained in the collision. Id. The state thereafter charged the defendant with manslaughter in the second degree with a motor vehicle while intoxicated in violation of General Statutes § 53a-56b. Id. The state elected to sever the counts, and it proceeded to try the defendant on the manslaughter count only. Id., 77. At the conclusion of the state's case-in-chief, the court granted the defendant's motion for a judgment of acquittal, concluding that the state had failed to prove beyond a reasonable doubt that the defendant's alleged intoxication had caused the decedent's death. Id.

The state then sought to prosecute the defendant on the charge of operating a motor vehicle under the influence of intoxicating liquor or drugs. Id. The trial court granted the defendant's motion to dismiss the

charge, holding that the second prosecution violated the double jeopardy protections of both the federal constitution and the Connecticut constitution. Id. The state appealed to this court, arguing that no double jeopardy violation existed as the two crimes required proof of different elements. Id.; *State* v. *Lonergan*, 16 Conn. App. 358, 362, 548 A.2d 718 (1988), aff'd, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990), overruled by *State* v. *Alvarez*, 257 Conn. 782, 794–95, 778 A.2d 938 (2001). Following this court's decision affirming the judgment of the trial court; see *State* v. *Lonergan*, supra, 16 Conn. App. 378–79; the state appealed to our Supreme Court.

On appeal, our Supreme Court affirmed the decision of this court. *State* v. *Lonergan*, supra, 213 Conn. 93. Citing approvingly to this court's analysis of *Illinois* v. *Vitale*, supra, 447 U.S. 410, the court stated that in instances of successive prosecutions, the *Blockburger* test was not the only applicable test to determine whether charged crimes constituted the "same offense" for double jeopardy purposes. *State* v. *Lonergan*, supra, 85–88. Accordingly, with one justice dissenting, the court held that "in successive prosecution cases if the same evidence offered to prove a violation of the offense charged in the first prosecution is the sole evidence offered to prove an element of the offense charged in the second prosecution, then prosecution of the second offense is barred on double jeopardy grounds, regardless of whether either offense requires proof of a fact that the other does not." (Internal quotation marks omitted.) Id., 92. With regard to the particular charges at issue in *Lonergan*, the court concluded that because the record demonstrated that the state would rely on and seek to prove the same act of operating a motor vehicle while intoxicated that was necessary to prove the manslaughter charge, and

because the defendant already had been acquitted of the manslaughter charge, the second prosecution for operating a motor vehicle while under the influence of intoxicating liquor or drugs was barred by the double jeopardy clause. Id., 92–93.

As we have stated, our Supreme Court in August, 2001, overruled its decision in *Lonergan* and "reinstate[d] the *Blockburger* test as the exclusive test for determining whether two offenses are the same offense for double jeopardy purposes." *State* v. *Alvarez*, supra, 257 Conn. 795. The petitioner's argument is not affected by the fact that *Lonergan* is no longer good law, for he argues that, while it was operative, *Lonergan* applied to bar the state from prosecuting him in a second trial for the charges on which the jury could not come to a unanimous verdict in the first trial. What the petitioner's argument fails to recognize, however, is that *Lonergan* is distinguishable from the factual and procedural circumstances underlying his appeal. The holding in *Lonergan* applied to bar *successive* prosecutions where the state would rely on the same evidence in the second prosecution on a charge that had been severed and never previously tried to prove an element of a crime charged in a prior prosecution. The petitioner here was not put through successive prosecutions for the charges on which the jury could not agree, but, rather, he was subjected to a *continuing* prosecution according to the fundamental principle that "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [the] petitioner was subjected." *Richardson* v. *United States*, 468 U.S. 317, 326, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984); see also 6 W. LaFave, J. Israel, N. King & O. Kerr, Criminal Procedure (3d Ed. 2007) § 25.1 (e), pp. 602–604; 21 Am. Jur. 2d 473–74, Criminal Law § 353 (2008) ("[t]he discharge of a jury that has convicted the defendant on some counts of an indictment and has disagreed

as to another count will not bar a subsequent prosecution for the offense on which they disagreed").

Our Supreme Court recognized this principle in the case relied on by the habeas court here, *State* v. *James*, supra, 247 Conn. 662. In *James*, the defendant, armed with two handguns, entered an after-hours club and, with guns drawn, demanded money from the bartender. Id., 666. The defendant shot the bartender, who eventually complied and gave money to the defendant. Id. The defendant took the money and proceeded to the exit, firing the handguns rapidly. Id., 666–67. In addition to the bartender, two other patrons were shot, one of whom died as a result. Id., 667.

The defendant was charged as a principal with felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), and two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5). Id., 664–65. At trial, the defendant testified that although he participated in the robbery, he did so only as a lookout for another man, who had taken the money and shot the victims. Id., 667. The jury found the defendant guilty of robbery in the first degree but was deadlocked and, thus, unable to return a verdict as to the remaining counts. Id., 665. The court denied the defendant's motion for a judgment of acquittal on the remaining counts, and the defendant subsequently was sentenced. Id., 665–66.

Following the defendant's sentencing, the state filed a revised substitute information seeking to retry the defendant for felony murder. Id., 666. The defendant moved to dismiss the charge on the grounds of double jeopardy and collateral estoppel, and the court denied the motion. Id. The defendant filed an interlocutory appeal to our Supreme Court, arguing, inter alia, that the double jeopardy clause of the fifth amendment to

the United States constitution barred the state's attempt to retry him for felony murder. Id.

The court framed the critical issue in the case as follows: "[W]hether the mistrial terminated jeopardy as to the felony murder count." Id., 673. In concluding that jeopardy was not terminated as a result of the mistrial, the court stated: "It is axiomatic that a mistrial required by the manifest necessities of the case does not terminate jeopardy. *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824); see also *Illinois* v. *Somerville*, 410 U.S. 458, 462, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973); *State* v. *Van Sant*, 198 Conn. 369, 377, 503 A.2d 557 (1986). The jury's inability to reach a unanimous verdict on a count that may compel the trial court to declare a mistrial is indisputably such a case. *Dreyer* v. *Illinois*, 187 U.S. 71, 86, 23 S. Ct. 28, 47 L. Ed. 79 (1902); *State* v. *Buell*, 221 Conn. 407, 414–15, 605 A.2d 539, cert. denied, 506 U.S. 904, 113 S. Ct. 297, 121 L. Ed. 2d 221 (1992); *Aillon* v. *Manson*, 201 Conn. 675, 678, 519 A.2d 35 (1986). '[A] trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [the defendant] was subjected.' *Richardson* v. *United States*, [supra, 468 U.S. 326]. 'The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would

be frustrated by denying courts power to put the defendant to trial again. . . . What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.' *Wade* v. *Hunter*, 336 U.S. 684, 688–89, 69 S. Ct. 834, 93 L. Ed. 974 (1949). 'The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and the jeopardy does not terminate when the jury is discharged because it is unable to agree.' *Richardson* v. *United States*, supra, 326. We hold, therefore, that the defendant's retrial for felony murder does not violate the double jeopardy clause." *State* v. *James*, supra, 247 Conn. 673–74.

The holding in *James* is determinative of the present appeal. In his first trial, the petitioner was charged with various counts of risk of injury to a child, reckless endangerment in the first degree, criminal possession of a firearm, carrying a pistol without a permit, attempt to commit assault in the first degree, attempt to commit murder and possession of narcotics. The jury found the petitioner guilty on the narcotics charge, not guilty of attempt to commit murder and could not arrive at a unanimous verdict with respect to the remaining charges. Judge Hauser's subsequent declaration of a mistrial due to the jury's failure to agree on the remaining charges was not an event that terminated jeopardy as to those charges. Therefore, the state's retrial of the petitioner on charges that deadlocked the jury did not violate the petitioner's constitutional right not to be placed in double jeopardy.

The petitioner's reliance on *State* v. *Lonergan*, supra, 213 Conn. 74, is misplaced. The state in *Lonergan* opted to sever the charges of manslaughter in the second degree with a motor vehicle and operating a motor vehicle under the influence of intoxicating liquor or

drugs and to proceed to trial only on the manslaughter charge. The jeopardy in which the defendant was placed by virtue of being prosecuted on this charge terminated upon the court's granting of his motion for a judgment of acquittal. Thus, the state's subsequent attempt to try the defendant on the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs was a successive prosecution, as opposed to a continuing prosecution. This factual and procedural context of *Lonergan* is distinguishable from the circumstances underlying the petitioner's appeal. As we have stated, the petitioner was not twice placed in jeopardy by virtue of the state's decision to try him again on the charges on which the jury could not reach a unanimous verdict in the first trial; rather, the jeopardy pertaining to those charges that attached at the commencement of the first trial was not terminated when the trial court declared a mistrial and, therefore, continued through the jury's verdict in the second trial.

Because the continued prosecution of the petitioner was not barred by double jeopardy principles, his trial and appellate counsel did not provide ineffective assistance by failing to raise a claim that it was. The habeas court, therefore, properly concluded that the petitioner was not denied the effective assistance of trial and appellate counsel.

The judgment is affirmed.

In this opinion the other judges concurred.